# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

No. 99-2201

_____

|  |  |  |
|---|---|---|
| | * | |
| Kenneth Eugene Barron, | * | |
| | * | |
| Appellant, | * | On Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Missouri. |
| | * | |
| P. W. Keohane, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 12, 2000

Filed: July 5, 2000

_____

Before RICHARD S. ARNOLD, BEAM, and LOKEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Kenneth Barron appeals from the District Court's[1] order dismissing without prejudice his habeas petition claiming deliberate indifference to his serious medical needs.

_____

[1]The Hon. Russell Clark, United States District Judge for the Western District of Missouri.

Barron asserted that the warden of the Medical Center for Federal Prisoners (MCFP) at Springfield, Missouri, has denied him proper medical treatment for his kidney disease because the MCFP medical staff is treating him with kidney dialysis rather than providing him access to a kidney transplant. He stated that this decision is adversely affecting his long-term survival. Barron asked the District Court to order the warden at MCFP to place him on a kidney-transplant waiting list or, in the alternative, to release him from custody to obtain a transplant.

In its dismissal order, the District Court relied particularly on the affidavit of Dr. Frederick Husted, the nephrologist at MCFP, in which Dr. Husted stated that dialysis is an acceptable treatment for Barron's kidney condition (membranoproliferative glomerulonephritis) and that Barron was responding well to that treatment. The Court also noted Dr. Husted's reference to a study he conducted which showed that patients suffering from glomerulonephritis have an "unusually low mortality rate on dialysis or a high mortality rate after transplantation." Although Barron cited studies showing that patients with kidney disease who receive transplants have better survival rates than those who do not receive transplants, the District Court concluded that nothing in the record "indicate[d] that continuing dialysis treatment is contraindicated." The Court concluded Barron had not established deliberate indifference to his serious kidney disease and dismissed the case without prejudice.

We agree that the statistics regarding kidney-transplant survival rates proffered by Barron are insufficient to support a conclusion that Dr. Husted's course of treatment amounts to deliberate indifference to a serious medical need. Accordingly, we affirm the order dismissing Barron's petition, without prejudice to his right to file a new case.

Although we affirm the District Court's dismissal, we take this opportunity to make several observations. First, less than six weeks after signing the affidavit relied on by the District Court in dismissing Barron's claim, Dr. Husted also signed a

consultation note which stated that Barron "appear[ed] to be an acceptable candidate for a transplant consultation." While that statement does not compel the conclusion that continuing dialysis for Barron's condition is medically inappropriate, it suggests that a kidney transplant may also be appropriate.

Second, as Barron's habeas counsel pointed out, although Dr. Husted stated that he had conducted a study showing low mortality rates for glomerulonephritis patients being treated with dialysis, neither the government nor Dr. Husted provided any supporting documentation for the study. In that regard, we note that discovery is available in habeas proceedings at the discretion of the District Court. See Rule 6(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Finally, although Barron did not directly challenge the constitutionality of the Bureau of Prisons organ transplant policy, we express our concern regarding that policy. Simply stated, the Bureau of Prisons does not provide organ transplants, and, in the event a prisoner can show he needs a transplant, requires him to demonstrate his ability to pay for the transplant procedure before a furlough for that purpose will be authorized. Given the Bureau's obligation to provide medical care to prisoners, see 18 U.S.C. § 4042, denial of a transplant to an inmate who needs – but cannot pay for – a transplant may raise constitutional concerns.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.